**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TERICA IGWEDIMMA, individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VEHO TECH, INC.,<br><br>Defendant. | No. 1:26-cv-00684-JLH |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY OR DISMISS IN PART THE COMPLAINT**

**BARNES & THORNBURG LLP**
Elizabeth S. Fenton (DE No. 5563)
Brittany M. Giusini (DE No. 6034)
222 Delaware Ave, Suite 1200
Wilmington, Delaware 19801
Telephone: 302-300-3434
Facsimile: 302-300-3456
Email: efenton@btlaw.com
bgiusini@btlaw.com

**TABLE OF CONTENTS**


**Page**

I. INTRODUCTION ..... 1

II. RELEVANT BACKGROUND ..... 1

III. THE COURT SHOULD COMPEL INDIVIDUAL ARBITRATION AND STAY THIS PROCEEDING PENDING MS. IGWEDIMMA'S ARBITRATION OF HER CLAIMS ..... 3

A. The FAA Applies to the Arbitration Clause. ..... 3

B. Under the FAA, the Court Must Ensure an Expeditious and Summary Hearing, with Only Restricted Inquiry into the Factual Issues Relevant to Whether the Parties Agreed to Arbitrate. ..... 5

C. The Arbitration Clause is Valid and Must be Enforced Under the FAA. ..... 7

1. The Gateway Issues Under the FAA Are Satisfied. ..... 7

a. A Valid Agreement to Arbitrate Exists. ..... 7

b. Ms. Igwedimma's Claims Fall Within the Scope of the Arbitration Clause. ..... 9

D. This Proceeding Should be Stayed Pending *Individual* Arbitration. ..... 10

E. Alternatively, if the Court Concludes Arbitration is Not the Appropriate Forum for This Dispute, the Court should Dismiss Counts II and III of the Complaint for Failure to State a Claim. ..... 12

1. Count II of the Complaint Should be Dismissed Because Ms. Igwedimma Does Not Plausibly Allege an Enforceable Contract Requiring Payment for Disputed Off-the-Clock Work in Sub-40-hour Workweeks. ..... 13

2. Count III Fails Because Ms. Igwedimma Does Not Allege the Kind of Mistake, Misreliance, Fraud, Coercion, or Comparable Unconscionable Conduct Alabama Requires for Unjust Enrichment. ..... 15

IV. CONCLUSION ..... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995)....................5

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)....................10

*Armstrong Bus. Servs., Inc. v. AmSouth Bank*,
817 So. 2d 665 (Ala. 2001)....................13

*In re Asbestos Prods. Liab. Litig.*,
384 F. Supp. 3d 532 (E.D. Pa. 2019)....................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................12

*AT&T Mobility, LLC v. Concepcion*,
563 U.S. 333 (2011)....................3, 4, 10, 11

*Baptist Health Sys., Inc. v. Mack*,
860 So. 2d 1265 (Ala. 2003)....................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................12

*Betkowski v. Kelley Foods of Ala., Inc.*,
697 F. Supp. 2d 1296 (M.D. Ala. 2010)....................10

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)....................4

*Ex parte Cain*,
838 So. 2d 1020 (Ala. 2002)....................7, 13

*Carusone v. Nintendo of Am., Inc.*,
No. 19-01183, 2020 WL 3545468 (N.D. Ala. June 30, 2020)....................8

*Chambers v. Groome Transp. of Ala.*,
41 F. Supp. 3d 1327 (M.D. Ala. 2014)....................9

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003)....................5

*Corporation Am. Car Wash. Sys. v. City of Birmingham*,
165 F. Supp. 3d 1117 (N.D. Ala. 2016) ........ 7

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ........ 7

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) ........ 4

*Guidotti v. Legal Helpers Debt Resol., LLC*,
716 F.3d 764 (3d Cir. 2013) ........ 6

*Hall St. Assoc., LLC v. Mattel, Inc.*,
552 U.S. 576 (2008) ........ 4

*Healthcare Servs. Grp., Inc. v. Fay*,
No. 13-0066, 2015 WL 5996940 (E.D. Pa. Oct. 14, 2015) ........ 5

*Howsam v. Dean Witter Reynolds Inc.*,
537 U.S. 79 (2002) ........ 7

*Humphrey v. Cheddar's Casual Cafe, Inc.*,
No. 16-00704, 2016 WL 3483168 (N.D. Ala. June 27, 2016) ........ 8

*Jones v. Scott Davis Chip Mill*,
No. 15-661, 2017 WL 5127717 (N.D. Ala. Nov. 6, 2017) ........ 15

*Jordan v. Mitchell*,
705 So. 2d 453 (Ala. Civ. App. 1997) ........ 15

*Kaneff v. Del. Title Loans, Inc.*,
587 F.3d 616 (3d Cir. 2009) ........ 6

*Kemp v. GameStop, Inc.*,
No. 18-1647, 2019 WL 2024292 (N.D. Ala. May 8, 2019) ........ 8

*Kennedy v. Polar-BEK & Baker Wildwood P'ship*,
682 So. 2d 443 (Ala. 1996) ........ 12

*Lamps Plus v. Varela*,
587 U.S. 176 (2019) ........ 11, 12

*Maddox v. U.S.A. Healthcare-Adams, LLC*,
350 F. Supp. 2d 968 (M.D. Ala. 2004) ........ 10

*Mantiply v. Mantiply*,
951 So. 2d 638 (Ala. 2006) ........ 14

*Marbaker v. Statoil U.S.A. Onshore Props., Inc.*,
801 F. App'x 56 (3d Cir. 2020)....12

*Martin v. Del. Title Loans, Inc.*,
No. 08-3322, 2008 WL 4443021 (E.D. Pa. Oct. 1, 2008)....6

*Matador Holdings, Inc. v. HoPo Realty Invs., L.L.C.*,
77 So. 3d 139 (Ala. 2011)....15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....4, 6, 9

*PacifiCare Health Sys., Inc. v. Book*,
538 U.S. 401 (2003)....7

*Palcko v. Airborne Express, Inc.*,
372 F.3d 588 (3d Cir. 2004)....6

*Perry v. Thomas*,
482 U.S. 483 (1987)....4

*Portofino Seaport Vill., LLC v. Welch*,
4 So. 3d 1095 (Ala. 2008)....15

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967)....7

*Pruitt v. Charter Commc'ns*,
No. 17-1764, 2019 WL 1199837 (N.D. Ala. Mar. 14, 2019)....14

*Rancher v. Brookdale Senior Living Cmtys., Inc.*,
No. 17-941, 2018 WL 1157206 (N.D. Ala. Mar. 5, 2018)....8

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010)....5

*Smith v. Spizzirri*,
601 U.S. 472 (2024)....5, 6, 10

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010)....11, 12

*Gov. of V.I. v. United Indus. Workers*,
169 F.3d 172 (3d Cir. 1999)....4

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960)....9

*White Sands Grp., LLC v. PRS II, LLC*,
998 So. 2d 1042 (Ala. 2008) ....................14

*Wright v. Cir. City Stores Inc.*,
82 F. Supp. 1279 (N.D. Ala. 2000) ....................8

**Statutes**

Alabama Uniform Electronic Transaction Act ....................7, 8

Fair Labor Standards Act ....................1, 3, 13

Federal Arbitration Act .................... *passim*

**Other Authorities**

1 Richard A. Lord, *Williston on Contracts* § 4:21 (4th ed. 2007) ....................14

Federal Rule of Civil Procedure 12(b)(6) ....................6, 16

Case 1:26-cv-00684-JLH Document 6 Filed 07/02/26 Page 7 of 23 PageID #: 93

## I. INTRODUCTION

At the start of her employment with Defendant Veho Tech, Inc. ("Veho" or the "Company"), Plaintiff Terica Igwedimma agreed that all disputes or claims arising from her employment with the Company shall be resolved by individual arbitration. Rather than pursue relief in arbitration, Ms. Igwedimma filed this action on behalf of herself and those similarly situated, claiming violation of the Fair Labor Standards Act (FLSA), breach of contract, and unjust enrichment. Under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 3-4, this Court must stay this lawsuit without prejudice to Ms. Igwedimma's ability to proceed with her claims in individual arbitration. And, under the Supreme Court's interpretation of the FAA, Ms. Igwedimma must proceed with her claims in *individual*, rather than *class*, arbitration.

Alternatively, and only if the Court declines to compel arbitration, Counts II and III must be dismissed because Ms. Igwedimma fails to state a claim for breach of contract and unjust enrichment.

## II. RELEVANT BACKGROUND[1]

Veho is a technology-driven logistics company that provides shipping and last-mile package delivery services for e-commerce brands. (Compl., D.I. 1, at ¶ 2.) Veho operates in two or more states and engages in interstate commerce by virtue of its employees' regular and routine use of phone lines. (*Id.* at ¶¶ 29-30.) To service its customers, Veho employs hourly, remote customer service representatives throughout the country. (*Id.* at ¶ 4.)

Ms. Igwedimma is an Alabama resident. (*Id.* at ¶ 36.) When Ms. Igwedimma applied for employment with Veho, she provided the unique email address of terica334@gmail.com to the

[1] We assume for the purposes of this motion only that the facts alleged by Ms. Igwedimma's pleading are true.

Company. (Declaration of Ahren Exeter ("Exeter Dec."), Ex. A, at ¶ 12.) On May 4, 2022, Veho offered Ms. Igwedimma employment as a Remote Coordinator, Live Client Operations. (*Id.* at 13.) After Ms. Igwedimma's manager electronically signed Ms. Igwedimma's onboarding documents, DocuSign notified Ms. Igwedimma (through her unique email address) that documents were available for her to review and sign, providing her with a link to access the documents. (*Id.* at ¶¶ 14-15.) Through the DocuSign link, Ms. Igwedimma accessed her Offer Letter, Employee Confidential Information and Invention Assignment Agreement, and Acknowledgment and Receipt of Veho's Teammate Handbook, reviewed the documents, selected a pre-selected electronic signature style, and signed the documents on May 5, 2022.[2] (*Id.* at ¶ 16.)

By signing the Offer Letter, Ms. Igwedimma agreed that, if she or the Company had any dispute against one another relating to Ms. Igwedimma's employment with Veho, they would bring such dispute in arbitration and not in court. (*Id.* at ¶ 17; *see also* Exeter Dec., Ex. A, at Ex. 1, p. 2.) Specifically:

> To ensure the rapid and economical resolution of disputes that may arise in connection with your employment with the Company, you and the Company agree that any and all disputes, claims, or causes of action, in law or equity, including but not limited to statutory claims, arising from or relating to the enforcement, breach, performance, or interpretation of this Agreement, your employment with the Company, or the termination of your employment, shall be resolved, to the fullest extent permitted by law, by final, binding and confidential arbitration conducted by JAMS or its successor, under JAMS' then applicable rules and procedures for employment disputes (available upon request and also currently available at http://www.jamsadr.com/rules-employment-arbitration/). You acknowledge that by agreeing to this arbitration procedure, both you and the Company waive the right to resolve any such dispute through a trial by jury or judge or administrative proceeding. You will have the right to be represented by legal counsel at any arbitration proceeding.
>
> * * *

[2] Ms. Igwedimma signed the Offer Letter as "Terica Jerome," and it appears that she changed her last name to Igwedimma in January 2026 after getting married. (Exeter Dec. at ¶ 19.)

> The Company shall pay all JAMS arbitration fees in excess of the administrative fees that you would be required to pay if the dispute were decided in a court of law (the "Arbitration Clause").

(Exeter Dec., Ex. A, at Ex. 1 p. 2.) After Ms. Igwedimma signed the Offer Letter, Employee Confidential Information and Invention Assignment Agreement, and Teammate Handbook Acknowledgment and Receipt, DocuSign automatically returned executed copies of these documents to Ms. Igwedimma and Veho.[3] (Exeter Dec., Ex. A, at ¶¶ 16-17.) The Company has maintained these documents in the ordinary course of business. (*Id.*) After onboarding, Ms. Igwedimma worked remotely for the Company from Alabama until the end of her employment on May 15, 2026. (*Id.* at ¶ 20; *see also* Compl., D.I. 1, at ¶¶ 36, 41.)

Now, Ms. Igwedimma, for herself and those she believes are similarly situated, has filed a complaint against Veho alleging three claims: failure to pay overtime wages in violation of the FLSA (Count I), breach of contract (Count II), and unjust enrichment (Count III). (*See generally*, Compl., D.I. 1.) The arbitration agreement Ms. Igwedimma signed is valid and enforceable, and her claims fall squarely within it. As a result, and considering that the Arbitration Clause does not provide for class arbitration, the Court must stay this proceeding pending individual arbitration.

## III. THE COURT SHOULD COMPEL INDIVIDUAL ARBITRATION AND STAY THIS PROCEEDING PENDING MS. IGWEDIMMA'S ARBITRATION OF HER CLAIMS

### A. The FAA Applies to the Arbitration Clause.

As affirmed by the United States Supreme Court in *AT&T Mobility, LLC v. Concepcion*, the FAA declares a liberal policy favoring the enforcement of arbitration contracts: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce

---

[3] During her employment, Ms. Igwedimma signed other documents, such as a position transfer document, via electronic signature. She used the same unique email address to receive, access, and sign the document as she did to receive and sign her Offer Letter in May 2022. (Exeter Dec. at ¶ 18.)

to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 563 U.S. 333, 339 (2011) (citing 9 U.S.C. § 2). In enacting the FAA, Congress sought to overcome widespread judicial hostility to the enforcement of arbitration agreements. *See Hall St. Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (explaining that the FAA was enacted "[t]o overcome judicial resistance to arbitration"). The FAA permits private parties to "trade[] the procedures . . . of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991). The FAA is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

To this end, the FAA not only places arbitration agreements on equal footing with other contracts, but it also amounts to a "congressional declaration of a liberal federal policy favoring arbitration agreements[.]" *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24). The FAA requires courts to compel a party who has "failed, neglected or refused to comply" with a valid agreement to arbitrate claims. *Gilmer*, 500 U.S. at 25.

The FAA governs the arbitration agreement here. The FAA applies where there is a written agreement to arbitrate binding the parties, and the contract evidences a transaction involving interstate commerce. *See, e.g., Gov. of V.I. v. United Indus. Workers*, 169 F.3d 172, 176 (3d Cir. 1999). The first requirement is satisfied, because Ms. Igwedimma signed the May 4, 2022 Offer Letter and agreed that she would arbitrate any dispute she had with the Company rather than seek relief in court. (Exeter Dec., Ex. A, at Ex. 1, p. 2.) The arbitration agreement also encompasses transactions "involving commerce" within the meaning of § 2 of the FAA. In applying the FAA,

the Supreme Court has made clear that the FAA is expansive and must be broadly applied. It is not limited to people or activities actually "within the flow of interstate commerce" – instead, it covers activities that merely "affect" commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74 (1995); *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57 (2003) (affirming broad interpretation of "involving commerce"). Veho operates in two or more states and engages in interstate commerce because of its employees' regular and routine use of phone lines. (Compl., D.I. 1, at ¶¶ 29-30.) These facts satisfy the interstate-commerce requirement. *See Allied-Bruce Terrains Cos.*, 513 U.S. at 282 ("the multistate nature" of defendants' business operations satisfied FAA's commerce requirement).

### B. Under the FAA, the Court Must Ensure an Expeditious and Summary Hearing, with Only Restricted Inquiry into the Factual Issues Relevant to Whether the Parties Agreed to Arbitrate.

Before the Court addresses the merits of this motion, it must choose a procedural mechanism. Although many federal statutes create substantive rights, and default to the Rules of Civil Procedure to provide a procedural framework for enforcing those rights, the FAA is different. Section 2 of the FAA creates a substantive right to arbitration, and §§ 3 and 4 of the FAA "establish[] procedures by which federal courts implement § 2's substantive rule." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010).

The Supreme Court reiterated the point in *Smith v. Spizzirri*, 601 U.S. 472 (2024), noting that the FAA "sets forth procedures for enforcing arbitration agreements in federal court" and then analyzing whether a stay or dismissal was appropriate under § 3 of the FAA, not the Rules of Civil Procedure. *Id*. at 473. Therefore, Veho respectfully submits that district courts must decide motions to compel arbitration under §§ 3 and 4 of the FAA, without reference to the Federal Rules of Civil Procedure. *See Healthcare Servs. Grp., Inc. v. Fay*, No. 13-0066, 2015 WL 5996940, at *1-3 (E.D. Pa. Oct. 14, 2015) (adjudicating motion to compel arbitration solely under the FAA's procedures,

without reference to the Rules of Civil Procedure); *Martin v. Del. Title Loans, Inc.*, No. 08-3322, 2008 WL 4443021, at *3-5 (E.D. Pa. Oct. 1, 2008) (same).

Panel opinions of the Third Circuit, however, have rendered that conclusion less clear. In *Palcko v. Airborne Express, Inc.*, 372 F.3d 588 (3d Cir. 2004), the panel observed that some Third Circuit cases "support the traditional practice of treating a motion to compel arbitration as a motion to dismiss for failure to state a claim upon which relief can be granted," under Rule 12(b)(6). *Id*. at 597-98. In *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616 (3d Cir. 2009), another panel concluded that "[a] district court decides a motion to compel arbitration under the same standard it applies to a motion for summary judgment." *Id*. at 620. In *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764 (3d Cir. 2013), yet another panel acknowledged that the Third Circuit had issued "inconsistent pronouncements" regarding the standard of review on a motion to compel arbitration and attempted to harmonize the latter two approaches. *Id*. at 771-76. But the *Guidotti* panel did not address whether *Rent-A-Center* stands for the proposition that courts must decide motions to compel arbitration under §§ 3 and 4 of the FAA rather than under a Rule of Civil Procedure.

In Veho's view, *Smith* and *Rent-A-Center* dictate that courts decide motions to compel arbitration under §§ 3 and 4 of the FAA, without reference to the Federal Rules of Civil Procedure. To the extent that lower court opinions suggest otherwise, it is the Supreme Court's opinions in *Smith* and *Rent-A-Center* that hold sway. *See, e.g., In re Asbestos Prods. Liab. Litig.*, 384 F. Supp. 3d 532, 545 (E.D. Pa. 2019) (reasoning that Third Circuit precedent that it "is irretrievably irreconcilable with the teachings of [the Supreme Court] can no longer stand").

Regardless of the procedural mechanism the Court employs, the Court must reach an expeditious and summary ruling. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 29 (The FAA demands "a summary and speedy disposition of motions or petitions to enforce arbitration

clauses."); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) (The FAA's "unmistakably clear congressional purpose [is] that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts.")

### C. The Arbitration Clause is Valid and Must be Enforced Under the FAA.

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract. 9 U.S.C. § 4. In determining whether to compel arbitration under the FAA, only two "gateway" issues must be evaluated: (a) whether there is a valid agreement to arbitrate between the parties; and (b) whether the agreement covers the dispute. *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Howsam v. Dean Witter Reynolds Inc.*, 537 U.S. 79, 83–84 (2002).

#### 1. The Gateway Issues Under the FAA Are Satisfied.

##### a. A Valid Agreement to Arbitrate Exists.

General contract law principles apply to the interpretation and enforcement of arbitration agreements. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943–45 (1995). Because Ms. Igwedimma is an Alabama resident and worked remotely for Veho from her home in Alabama, Alabama contract law governs. (Compl., D.I. 1, at ¶¶ 36, 41.) Under Alabama law, a valid enforceable contract exists if a party can demonstrate "an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Ex parte Cain*, 838 So. 2d 1020, 1027 (Ala. 2002) (other citations omitted); *see also Corporation Am. Car Wash. Sys. v. City of Birmingham*, 165 F. Supp. 3d 1117, 1126 (N.D. Ala. 2016). These requirements are met here.

*First*, Veho offered Ms. Igwedimma the Arbitration Clause by presenting it to her in the May 4, 2022 Offer Letter. (Exeter Dec., Ex. A, at ¶¶ 15-16.) Ms. Igwedimma accepted it by signing the Offer Letter, and her electronic signature is sufficient under Alabama law. (*Id.*) Under

Alabama's Uniform Electronic Transaction Act, "[a] record or signature may not be denied legal effect or enforceability solely because it is in electronic form." Ala. Code § 8-1A-7(a). And "[a] contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation." *Id*. § 8 1A-7(b). Further, an "electronic signature is attributable to a person if it was the act of the person," which "may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Ala. Code § 8-1A-9(a). Veho has done this. (Exeter Dec., Ex. A, at ¶¶ 4-17.) Thus Veho has demonstrated that the electronic signature was the act of Ms. Igwedimma, and courts have found electronic signatures sufficient to demonstrate a party's acceptance of the terms of agreements with arbitration provisions. *See, e.g., Humphrey v. Cheddar's Casual Cafe, Inc.*, No. 16-00704, 2016 WL 3483168, at *3 (N.D. Ala. June 27, 2016) (enforcing arbitration agreement when employer demonstrated how plaintiff's electronic signature on arbitration agreement came to be); *see also Kemp v. GameStop, Inc.*, No. 18-1647, 2019 WL 2024292, at *3 n.3 (N.D. Ala. May 8, 2019) ("Under Alabama law, an electronic signature has the same legal effect as a written ink signature") (citing Ala. Code § 8-1A-9); *Rancher v. Brookdale Senior Living Cmtys., Inc.*, No. 17-941, 2018 WL 1157206, at *1 n.2 (N.D. Ala. Mar. 5, 2018) (same).

*Second*, the requirement of consideration is also met. Under Alabama law, "[c]onsideration for an agreement to arbitrate exists when both parties promise to resolve claims through arbitration rather than another judicial process." *Carusone v. Nintendo of Am., Inc.*, No. 19-01183, 2020 WL 3545468, at *4 (N.D. Ala. June 30, 2020) (citing *Wright v. Cir. City Stores Inc.*, 82 F. Supp. 1279, 1284 (N.D. Ala. 2000)). Here, the Arbitration Clause is mutual, creating benefits to, and obligations on, both Ms. Igwedimma and Veho. (Exeter Dec., Ex. A, at Ex. 1, p. 2.)

*Finally*, mutual assent existed between the parties. Mutual assent to a contract is typically manifested by signature, but may also be manifested by ratification. *Chambers v. Groome Transp. of Ala.*, 41 F. Supp. 3d 1327, 1343 (M.D. Ala. 2014) (citing *Baptist Health Sys., Inc. v. Mack*, 860 So. 2d 1265, 1273 (Ala. 2003)). Not only did Ms. Igwedimma sign the Offer Letter containing the Arbitration Clause, but she also worked for Veho for four years afterward. This conduct demonstrates both Ms. Igwedimma and Veho assented to the Arbitration Clause. *Chambers*, 41 F. Supp. 3d at 1343 ("The Alabama Supreme Court held that the employee, 'by continuing her employment . . . subsequent to her receipt of the Program document, expressly assented to the terms of the Program document and was therefore bound by the arbitration provision contained in that document.'") (quoting *Mack*, 860 So. 2d at 1274)).

**b. Ms. Igwedimma's Claims Fall Within the Scope of the Arbitration Clause.**

As we discussed above, the FAA requires courts to apply a presumption in favor of arbitrability. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. In fact, courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960). Ms. Igwedimma's claims fall within the scope of the Arbitration Clause.

The Arbitration Clause provides that

> [Y]ou and the Company agree that any and all disputes, claims, or causes of action, in law or equity, including but not limited to statutory claims, arising from or relating to . . . your employment with the Company . . . shall be resolved, to the fullest extent permitted by law, by final, binding and confidential arbitration conducted by JAMS or its successor. . .
>
> * * *
>
> You acknowledge that by agreeing to this arbitration procedure, both you and the Company waive the right to resolve any such dispute through a trial by jury or judge or administrative proceeding.

(Exeter Dec., Ex. A, at Ex. 1, p. 2.) This broad language encompasses Ms. Igwedimma's dispute with Veho; her claims are therefore within the scope of the Arbitration Clause. *See, e.g., Betkowski v. Kelley Foods of Ala., Inc.*, 697 F. Supp. 2d 1296, 1300–01 (M.D. Ala. 2010) (compelling arbitration of plaintiff's employment claim where arbitration agreement covered "any claim, dispute, or issue" involving plaintiff's employment or termination); *Maddox v. U.S.A. Healthcare-Adams, LLC*, 350 F. Supp. 2d 968, 975 (M.D. Ala. 2004) (granting motion to compel arbitration of employment claims where arbitration agreement applied to "all claims and disputes" between plaintiff and defendant).

**D. This Proceeding Should be Stayed Pending *Individual* Arbitration.**

Once a plaintiff is compelled to arbitration, the court must stay the judicial proceeding pending arbitration. *Smith*, 601 U.S. at 473; *see also* 9 U.S.C. § 3. However, where, as here, Ms. Igwedimma brings claims on behalf of herself and those similarly situated, the Court must compel Ms. Igwedimma to *individual* arbitration. The Supreme Court is clear on this point: unless an arbitration agreement expressly provides for classwide arbitration, the arbitration agreement requires individual arbitration. As instructed by the Supreme Court, silence or ambiguity is not enough.

In *Concepcion*, the FAA required the Court to invalidate a law conditioning enforcement of an arbitration agreement on the availability of a class procedure, as that law "interfere[d] with fundamental attributes of arbitration" promoted by the FAA. 563 U.S. at 344. "[T]he switch from bilateral to class arbitration," the Court reasoned, "sacrifices the principal advantage of arbitration – its informality – and makes the process slower, more costly, and more likely to generate procedural morass than final judgment," thus violating the FAA. *Id.* at 348; *see also Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 238 (2013) (reiterating the point).

*Concepcion* thus reinforced the animating principles of *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, in which the Court held that an arbitration panel exceeded its powers by deciding, as a policy matter, that class arbitration could be ordered under an arbitration agreement when the agreement was silent on that issue. 559 U.S. 662 (2010). The Court explained that classwide procedures change the nature of arbitration so much that the parties could not be presumed to have consented to them. *Id*. at 685. For example, in class arbitration, rather than resolving a dispute between two parties, the arbitrator would resolve many disputes between hundreds or thousands of parties; the privacy and confidentiality of bilateral arbitration would be lost; the arbitrator's award would adjudicate the rights of absent parties; and the commercial stakes of class arbitration would be like those of class-action litigation, even though judicial review is much more limited. *Id*. at 685-87. Partly for those reasons, "a party may not be compelled under the FAA to submit to class arbitration *unless there is a contractual basis for concluding that the party agreed to do so*." *Id*. at 684 (emphasis added).

*Stolt-Nielsen* confirms that contractual silence is not enough for courts to force parties to submit to class arbitration. *Id.* at 685. The Supreme Court's *Lamps Plus v. Varela* decision took this point further: contractual ambiguity cannot create a basis for concluding that a party has agreed to class arbitration. 587 U.S. 176, 185-86 (2019). Indeed, *Lamps Plus* instructs courts not to infer consent; the holding echoes that there must be an "affirmative 'contractual basis'" for finding that parties consented specifically to class arbitration. *Id.* at 185 (quoting *Stolt-Nielsen*, 559 U.S. at 684).

There is no affirmative contractual basis for finding that Ms. Igwedimma and Veho consented to class arbitration. In fact, the Arbitration Clause here suggests the opposite: it is between only Ms. Igwedimma and Veho; thus, it only requires bilateral arbitration. *See, e.g.,*

*Marbaker v. Statoil U.S.A. Onshore Props., Inc.*, 801 F. App'x 56, 61 (3d Cir. 2020) (finding that bilateral language such as "Lessor" and "Lessee" as used in arbitration clauses foreclose intent to resolve disputes among multiple contracts as a class). The Arbitration Clause also requires "confidential" arbitration between Ms. Igwedimma and Veho which, as discussed in *Stolt-Nielsen*, would be impossible to maintain if this Court were to compel class arbitration. Because *Stolt-Nielsen* and *Lamps Plus* foreclose any avenue for Ms. Igwedimma to represent class claims in arbitration, the Court must compel Ms. Igwedimma to *individual* arbitration and stay these proceedings pending its outcome.

### E. Alternatively, if the Court Concludes Arbitration is Not the Appropriate Forum for This Dispute, the Court should Dismiss Counts II and III of the Complaint for Failure to State a Claim.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. But those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 550. Ms. Igwedimma's Counts II and III fail to meet this standard, and dismissal is appropriate for those claims.[4]

[4] If the Court finds Ms. Igwedimma has alleged facts plausibly suggesting a breach of contract or unjust enrichment claim, it must dismiss the other. That is, if the Court determines no contract exists between the parties, it must dismiss her breach of contract claim. If the determines a contract does exist between the parties, it must dismiss her unjust enrichment claim. *See Kennedy v. Polar-BEK & Baker Wildwood P'ship*, 682 So. 2d 443, 447 (Ala. 1996) ("This Court has recognized that where an express contract exists between two parties, the law generally will not recognize an implied contract regarding the same subject.") (other citations omitted).

As an initial matter, the Complaint repeatedly defines Counts II and III as filler for weeks when the FLSA allegedly affords no remedy because Ms. Igwedimma worked fewer than 40-hour workweeks. But that framing only underscores the pleading defect: Ms. Igwedimma is trying to convert a federal "hours worked" dispute into state common-law theories without pleading the state-law elements Alabama requires. If Ms. Igwedimma wishes to pursue Alabama common-law relief, she must identify the actual contract language creating the obligation she invokes and, for unjust enrichment, allege facts showing the retention of a benefit was "unjust" in the Alabama sense, not merely unpaid. She has done neither.[5]

**1. Count II of the Complaint Should be Dismissed Because Ms. Igwedimma Does Not Plausibly Allege an Enforceable Contract Requiring Payment for Disputed Off-the-Clock Work in Sub-40-hour Workweeks.**

Under Alabama law, a breach-of-contract claim requires "(1) the existence of a valid contract binding upon the parties in the action; (2) the plaintiff's own performance; (3) the defendant's nonperformance, or breach; and (4) damage." *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 673 (Ala. 2001) (other citation omitted). As we discussed above, the basic elements of a contract are offer and acceptance, consideration, and mutual assent to terms essential to the formation of a contract. *Ex parte Cain*, 838 So. 2d at 1026–27.

The Complaint fails to plausibly suggest these elements as the supposed promise Ms. Igwedimma seeks to enforce here. In the Complaint, Ms. Igwedimma alleges only that Veho had a "binding and valid contract" to "pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate," that this promise is evidenced by paystubs, and that employees would be paid certain hourly rates. (Compl., D.I. 1, at ¶¶ 138-141.) These

[5] Should the Court find that Counts II and III fail to state a claim, the Court should strike Ms. Igwedimma's "Rule 23 Class Action Allegations" section from her Complaint.

allegations do not identify contractual language obligating the Company to treat the disputed pre-shift, meal-period, and post-shift activities as compensable work in weeks where employees worked less than 40-hour workweeks, nor do they specify what off-the-clock activities supposedly fall within the alleged promises Veho made to employees. A bare allegation that Ms. Igwedimma had an hourly rate and performed duties does not plausibly establish a contractual undertaking broader than paying hourly rates for credited time.

That omission is fatal because Alabama requires mutual assent to sufficiently definite essential terms, and "a contract that leaves material portions open for future agreement is nugatory and void for indefiniteness." *White Sands Grp., LLC v. PRS II, LLC*, 998 So. 2d 1042, 1051 (Ala. 2008) (internal quotation marks omitted); *see also Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006) (reasoning that a contract must include the necessary essential terms with requisite definiteness to be considered a valid, enforceable contract). For example, "[a] lack of definiteness in an agreement may concern the time of performance, the price to be paid, and the work to be done[.]" *White Sands Grp.*, 988 So. 2d at 1051 (citing 1 Richard A. Lord, *Williston on Contracts* § 4:21, at 644 (4th ed. 2007)). And when a contract fails for indefiniteness, it is a question of law for the court to decide. *White Sands Group*, 998 So. 2d at 1052 (other citations omitted).

Here, the Complaint pleads at most an hourly rate and job title – it does not plead definite contractual terms from which the Court could determine whether failure to pay for the alleged boot-up, lunch-return, and shutdown activities in workweeks less than 40 hours constituted a breach of contract rather than a dispute over what constitutes compensable hours worked, *i.e.*, Count I of the Complaint. As a result, dismissal of Count II is appropriate. *See, e.g., Pruitt v. Charter Commc'ns*, No. 17-1764, 2019 WL 1199837, at *11 (N.D. Ala. Mar. 14, 2019) ("[Plaintiff] has not alleged the existence of any contract between him and any of the [] defendants,

much less a breach of that contract or resulting damages. Accordingly, his breach of contract claim will be dismissed.")

**2. Count III Fails Because Ms. Igwedimma Does Not Allege the Kind of Mistake, Misreliance, Fraud, Coercion, or Comparable Unconscionable Conduct Alabama Requires for Unjust Enrichment.**

Ms. Igwedimma's Complaint assumes that an unjust enrichment claim in Alabama is broad. She is mistaken. To prevail on such a claim, Ms. Igwedimma must show "(1) [Veho] knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Jones v. Scott Davis Chip Mill*, No. 15-661, 2017 WL 5127717, at *21 (N.D. Ala. Nov. 6, 2017) (quoting *Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008) (quotations omitted)). Next, the plaintiff must show retention of the benefit would be unjust – "[o]ne is unjustly enriched if his retention of a benefit would be unjust." *Matador Holdings, Inc. v. HoPo Realty Invs., L.L.C.*, 77 So. 3d 139, 145 (Ala. 2011) (other quotations and citation omitted). "'Retention of a benefit is unjust if (1) the donor of the benefit . . . acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit . . . engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship.'" *Jones*, 2017 WL 5127717, at *21 (finding "In the absence of mistake or misreliance by the donor, or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been unjustly enriched") (quoting *Jordan v. Mitchell*, 705 So. 2d 453, 458 (Ala. Civ. App. 1997)).

Count III does not come close to meeting that standard. In a wholly conclusory fashion, Ms. Igwedimma alleges only that Veho benefitted from unpaid work, knew or should have known employees expected to be paid, and retained that benefit without paying "fair compensation." (*See generally* Compl., D.I. 1.) Ms. Igwedimma's allegations may describe a compensation dispute, but they do not plausibly suggest mistake, misreliance, fraud, coercion, abuse of a confidential

relationship, or any comparable unconscionable conduct recognized by Alabama law. This Count therefore fails on its own terms.

## IV. CONCLUSION

When Ms. Igwedimma began her employment with Veho, she agreed to arbitrate the claims she now brings in this lawsuit. Her claims belong in arbitration, and they belong in individual arbitration because there is no contractual basis in the Arbitration Clause providing for class arbitration. Only if the Court disagrees that Ms. Igwedimma's claims belong in individual arbitration should it dismiss Counts II and III under Rule 12(b)(6).

Dated: July 2, 2026

Respectfully submitted,

**BARNES & THORNBURG LLP**

*/s/ Elizabeth S. Fenton*
Elizabeth S. Fenton (DE No. 5563)
Brittany M. Giusini (DE No. 6034)
222 Delaware Ave, Suite 1200
Wilmington, Delaware 19801
Telephone: 302-300-3434
Facsimile: 302-300-3456
Email: efenton@btlaw.com
bgiusini@btlaw.com

OF COUNSEL:

Matthew J. Hank*
Joseph M. Carr*
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, Pennsylvania 19102.1321
Telephone: 267.402.3000
Facsimile: 267.402.3131
Email mhank@littler.com
jmcarr@littler.com

* Motions for *Pro hac vice* admission forthcoming

Attorneys for Defendant
Veho Tech, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of July, 2026, the foregoing document was filed using the District of Delaware's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon all counsel of record.

*/s/ Elizabeth S. Fenton*
Elizabeth S. Fenton (DE No. 5563)